UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

SANTOS A. LIMA-FLORES,

    Plaintiff,

v.

MS. PAULINE SINCLAIR, ODOC RN,

    Defendant.

Case No. 6:21-cv-01457-MC

OPINION AND ORDER

MCSHANE, Chief Judge.

    Plaintiff, an adult in custody (AIC) at Two Rivers Correctional Institution (TRCI), filed suit under 42 U.S.C. § 1983 and alleged that Defendant Sinclair retaliated against him and exhibited deliberate indifference to his serious medical needs in violation of his rights under the First and Eighth Amendments. Defendant now moves for summary judgment on Plaintiff's claims pursuant to Federal Rule of Civil Procedure 56. Plaintiff fails to raise a genuine of material fact to defeat summary judgment, and Defendant's motion is GRANTED.

1   - OPINION AND ORDER

BACKGROUND

On October 3 and 4, 2019, Plaintiff was transferred from TRCI to the Oregon State Penitentiary (OSP) and housed in Cell 7 of the infirmary. Mandt Decl. Ex. 1.

Plaintiff was in a wheelchair when he arrived at OSP, and he showered with assistance from orderlies and ate a meal. *Id.* Ex. 2 at 1. Plaintiff requested narcotic pain medication, and a medical provider denied his request because Plaintiff, who is diabetic, had no existing orders for medication aside from insulin. *Id.* Ex. 2 at 1, Ex. 3. Later that day, a nurse administered Plaintiff's prescribed insulin. *Id.* Ex. 2 at 1.

On October 5, 2019, Plaintiff again asked about narcotic pain medication and refused Tylenol and ice offered by Defendant to address his discomfort. *Id.* Ex. 2 at 2. In the evening, Plaintiff used the toilet and transferred to and from his wheelchair and to his bed with the assistance of an orderly. *Id.*

Later that night, Plaintiff complained to another nurse that he was not receiving his "psych" medications. The nurse reported that Plaintiff's medical records and medications were being transferred to OSP and would be reviewed. Mandt Decl. Ex. 2 at 3.

During the morning of October 6, 2019, Defendant twice checked on Plaintiff without incident. *Id.* Defendant observed Plaintiff eating a meal without assistance and conversing with an inmate visitor. *Id.* Shortly afterward, Defendant instructed Plaintiff to wear his shirt and pants while in the infirmary, and Plaintiff began talking loudly and flailing his arms. *Id.* About an hour later, Plaintiff "became threatening to other inmates" and threatened "to file a grievance on them" and against shift nurses. *Id.* Plaintiff was transferred to an isolation cell, Cell 6, to lessen the disruption to other AICs in the infirmary. *Id.* Ex. 2 at 4.

2   - OPINION AND ORDER

Plaintiff's confrontational behavior continued after he was moved to Cell 6, as documented by another nurse on duty. Plaintiff was lying on the floor next to his wheelchair and bed, gesturing aggressively and "using verbally abusive language while making legal threats." Mandt Decl. Ex. 2 at 4. When asked why he would not lie on his bed, Plaintiff answered, "I don't like that bed." *Id.* The nurse found no medical concerns to address and told Plaintiff that medical staff would return to check on him. *Id.* Later that day, Plaintiff moved the mattress to the floor and lay on it for several hours. *Id.* Ex. 2 at 5.

On October 7, 2019, Defendant noted that Plaintiff had lain on his mattress and used the toilet. *Id.* When Defendant approached Plaintiff to test his blood sugar levels, he called her a "witch," refused blood testing and insulin, and threatened to throw a plastic urinal at her. *Id.* Ex. 2 at 6. In the afternoon or evening, another nurse checked on Plaintiff and provided him with fresh clothing. *Id.* The nurse informed Plaintiff that the pharmacy had delivered his other medications, and Plaintiff was cooperative while the nurse checked his blood levels and administered his insulin.

On October 8, 2019, Plaintiff again refused Defendant's attempts to check his blood sugar levels and administer insulin. Mandt Decl. Ex. 2 at 6-7. Later that evening, Plaintiff's other medications were administered "per" orders and he asked another nurse if he could speak to a mental health counselor; the nurse submitted a referral. *Id.* Ex. 2 at 7.

On October 9, 2019, Plaintiff was "very apologetic to staff" and indicated that his medical condition made him "angry" and caused him to "strike out verbally." *Id.* Plaintiff took a shower and ate a meal. *Id.* The next day, Plaintiff was observed standing and walking in his cell. When he noticed that he was being observed, Plaintiff lowered himself to the ground and crawled to his mattress. *Id.*

3   - OPINION AND ORDER

On October 12, 2019, Defendant checked on Plaintiff and instructed him to dress, and afterward Plaintiff ate a meal while sitting in his wheelchair. Mandt Decl. Ex. 2 at 8.

On October 13, 2019, Plaintiff used his wheelchair to go to the shower area, transferred into a shower chair, and showered without assistance. Plaintiff received a meal and his medications without incident. *Id.*

During the next two days, nurses reported that Plaintiff slept most of the time and was generally compliant regarding his medication. *Id.* Ex. 2 at 8-9.

On October 15, 2019, Plaintiff was moved back to Cell 7. *Id.* Ex. 2 at 9. After that date, Plaintiff was observed using his wheelchair, performing daily living activities, conversing with a visitor, and sleeping. *Id.* Ex. 2 at 10-12. AIC orderlies also observed Plaintiff trying to obtain extra trays of food, and Defendant told Plaintiff that he must comply with the diabetic diet ordered by a physician. *Id.* Ex. 2 at 13.

On December 3, 2019, Plaintiff was transferred from OSP to TRCI. *Id.* Ex. 1.

## DISCUSSION

Defendant moves for summary judgment on grounds that the evidence of record does not support Plaintiff's claims of deliberate indifference and retaliation and instead reflects that he received adequate medical treatment from Defendant.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing the absence of any genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this initial burden is met, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The Court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). Because Plaintiff is proceeding pro se, the Court construes his pleadings liberally and affords him the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 882-83 (9th Cir. 1991). However, this does not relieve Plaintiff from his "obligation to show a genuine issue of material fact for trial through the presentation of specific, admissible evidence." *Epling v. Komathy*, 2011 WL 13142131, at *1 (C.D. Cal. Dec. 5, 2011). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations and quotation marks omitted).

Plaintiff alleges that Defendant exhibited deliberate indifference to his health and medical needs by: 1) transferring him to an inaccessible isolation cell; 2) denying him meals and the use of his wheelchair; 3) denying him medication; and 4) refusing his requests for a shower. Plaintiff also alleges that Defendant denied him medical treatment and transferred him to an isolation cell in retaliation for his threats of legal action.

Prison officials and physicians violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with deliberate indifference to an AIC's health or serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference is shown if a prison official knows that an AIC faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In the context of medical treatment, prison officials may demonstrate deliberate indifference by denying, delaying, or intentionally interfering with medical treatment, or by the way they provide medical treatment. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Hallett v. Morgan*, 296

F.3d 732, 744 (9th Cir. 2002). Where a plaintiff alleges a delay in receiving medical treatment, the delay must have led to "significant harm." *Hallett*, 296 F.3d at 746. For the reasons discussed below, the factual record does not support Plaintiff's allegations.

It is well established that Defendant cannot be held liable under § 1983 unless she personally participated in the alleged constitutional deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). According to Defendant, correctional staff members oversee housing assignments and the distribution of meals, and as a nurse, Defendant was not involved with Plaintiff's placement in Cell 6 or his receipt of meals. Sinclair Decl. ¶¶ 6-7. Plaintiff presents no evidence to dispute this assertion and fails to show that Defendant had authority over his transfer to Cell 6 or his receipt of meals. Regardless, the medical record reflects that Plaintiff had access to a wheelchair at OSP and regularly ate meals, and Plaintiff presents no evidence to the contrary. Mandt Decl. Ex. 2 at 1-2, 4-5, 7-13; *see also id.* Exs. 5, 7, 9.

Likewise, no evidence plausibly suggests that Defendant denied Plaintiff medication or mental health treatment. At the time he was transferred to OSP, Plaintiff had orders for only insulin, and the record reflects that Plaintiff was regularly given insulin and other medications once they were received at OSP. *See generally id.* Ex. 2. Sinclair Decl. ¶ 8. The record also reflects that Plaintiff asked other medical providers for mental health services and did not direct his requests to Defendant. Sinclair Decl. ¶ 9; Mandt Decl. Ex. 2 at 3, 7.

Finally, no evidence supports Plaintiff's assertion that Defendant denied him the opportunity to shower. The record shows that on October 6, 2019, Plaintiff informed another nurse that he had urinated on himself because he did not have a plastic urinal in Cell 6; it is unclear why Plaintiff was not using the toilet. Mandt Decl. Ex. 2 at 5. Plaintiff was issued a urinal and the next day he was provided a change of clothing. *Id.* Ex. 2 at 5-6. The reporting

nurse – who was not Defendant – noted that Plaintiff did not smell of feces and had not requested a "clean up" or shower. *Id.* Ex. 2 at 6. Instead, Plaintiff told the nurse that he needed a "cleaning" the night before "but forgot to mention it." *Id.* Two days later, the same nurse offered Plaintiff the opportunity to shower. *Id.* Ex. 2 at 7. Defendant was not involved in these interactions and no evidence suggests that she denied Plaintiff a shower. *See id.* Ex. 2 at 7-8. The record also reflects that Plaintiff showered several times while in the OSP infirmary, and no evidence suggests that he was subjected to unsanitary conditions that arose to the level of an Eighth Amendment violation. *Id.* Ex. 2; *see Murillo v. Parkinson*, 2015 WL 3791450, at *17 (C.D. Cal. June 17, 2015) ("While the Eighth Amendment protects prisoners from cruel and unusual punishment, there is no discernable constitutional right to frequent showers.").

Plaintiff likewise presents no evidence to support his claim of retaliation. To sustain a First Amendment retaliation claim, Plaintiff must establish five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). As explained above, Plaintiff presents no evidence that Defendant denied him medical care or authorized his transfer to Cell 6. Further, Plaintiff fails to show that his placement in an isolation cell failed to advance a reasonable correctional goal.

In sum, Plaintiff presents nothing but unsupported and conclusory assertions to sustain his claims, and it is well established that "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Comty. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

CONCLUSION

Defendant's Motion for Summary Judgment (ECF No. 32) is GRANTED, and all pending motions are DENIED as moot. An appeal of this Opinion and Order or Judgment dismissing this action would be frivolous or not taken in good faith, and Plaintiff's IFP status is REVOKED.

IT IS SO ORDERED.

DATED this 7th day of March, 2024.

                                                        s/ Michael J. McShane
                                                        MICHAEL J. MCSHANE
                                                        United States District Judge